**GORLICK, KRAVITZ & LISTHAUS, P.C.**
**Joy K. Mele (JM0207)**
**Jennifer M. Catera (JC6943)**
**29 Broadway, 20th Floor**
**New York, New York 10006**
**jmele@gkllaw.com**
**jcatera@gkllaw.com**
**Tel. (212) 269-2500**
**Fax (212) 269-2540**
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

**CEMENT AND CONCRETE WORKERS**          :
**DISTRICT COUNCIL WELFARE FUND;**        :
**CEMENT AND CONCRETE WORKERS**          :
**DISTRICT COUNCIL PENSION FUND;**        :
**CEMENT AND CONCRETE WORKERS**          :
**DISTRICT COUNCIL ANNUITY FUND; CEMENT** :          <u>COMPLAINT</u>
**AND CONCRETE WORKERS TRAINING AND**     :
**APPRENTICESHIP FUND; CEMENT AND**       :
**CONCRETE WORKERS DISTRICT COUNCIL**     :
**SCHOLARSHIP FUND; MARGARET BOWEN, in**  :
**her fiduciary capacity as FUND ADMINISTRATOR;** :
**and CEMENT AND CONCRETE WORKERS**       :
**DISTRICT COUNCIL,**                     :
                                          :
                  **Plaintiffs,**     :
                                          :
  - against -                    :
                                          :
**CONCRETE INDUSTRIES ONE CORP.; and**    :
**MARK FURER, in his Personal Capacity,** :
                                          :
                **Defendants.** :
-------------------------------------------------------------------X

Plaintiffs Cement and Concrete Workers District Council Welfare Fund; Cement and

Concrete Workers District Council Pension Fund; Cement and Concrete Workers District Council

Annuity Fund; Cement and Concrete Workers Training and Apprenticeship Fund; Cement and

Concrete Workers District Council Scholarship Fund (collectively, the "Funds"); Margaret

Bowen, in her fiduciary capacity as Fund Administrator ("Bowen"); and Cement and Concrete Workers District Council ("Union") (collectively "Plaintiffs"), by and through their attorneys, Gorlick, Kravitz & Listhaus, P.C., as and for their Complaint against Defendants Concrete Industries One Corp. ("Concrete Industries") and Mark Furer ("Furer"), respectfully allege as follows:

## NATURE OF THE ACTION AND JURISDICTION

1.      This is a civil action brought pursuant to, *inter alia*, §§ 502(a)(3) and 515 of the Employee Retirement Income Security Act ("ERISA"), as amended (29 U.S.C. §§ 1132(a)(3) and 1145), and § 301 of the Labor Management Relations Act of 1947 (29 U.S.C. § 185) (the "Taft-Hartley Act"), by Plaintiffs for breach of contract, injunctive relief, and other legal and equitable relief under ERISA and the Taft-Hartley Act.

2.      This Complaint alleges, *inter alia*, that by failing, refusing, or neglecting to comply with specific statutory and contractual obligations, Defendants Concrete Industries and Furer violated one or more contracts between an employer and a labor organization, as defined under the Taft-Hartley Act, the Funds' respective trust agreements, and ERISA.

3.      Jurisdiction of this Court is invoked under the following statutes:

      a.      ERISA § 502(e)(1) and (f) (29 U.S.C. § 1132(e)(1) and (f));

      b.      Taft-Hartley Act § 301 (29 U.S.C. § 185);

      c.      28 U.S.C. § 1331 (federal question);

      d.      28 U.S.C. § 1337 (civil actions arising under Act of Congress regulating commerce); and

      e.      28 U.S.C. § 1367 (supplemental jurisdiction).

4.     Venue properly lies in this district under ERISA § 502(e)(2) (29 U.S.C. § 1132(e)(2)) and the Taft-Hartley Act § 301 (29 U.S.C. § 185(c)) because the Funds and the Union are administered and maintain their principal offices in this district, the contractual breaches took place in this district, and Concrete Industries and Furer may be found in this district. Service of process may be made on Concrete Industries and Furer in any other district in which they may be found pursuant to ERISA § 502(e)(2) (29 U.S.C. § 1132(e)(2)) and Rule 4(e) of the Federal Rules of Civil Procedure.

## PARTIES

5.     The Funds are jointly-administered, multi-employer, labor-management trust funds established and maintained pursuant to various collective bargaining agreements in accordance with the Taft-Hartley Act §§ 302(c)(5) and (c)(6) (29 U.S.C. § 186(c)(5) and (c)(6)). The Funds also are employee benefit plans within the meaning of ERISA §§ 3(1), 3(2), 3(3) and 502(d)(1) (29 U.S.C. §§ 1002(1)-(3), and 1132(d)(1)), and multi-employer plans within the meaning of ERISA §§ 3(37) and 515 (29 U.S.C. §§ 1002(37) and 1145). The Funds are authorized to maintain suits as independent legal entities under ERISA § 502(d)(1) (29 U.S.C. § 1132(d)(1)).

6.     The Funds provide fringe benefits to eligible employees on whose behalf employers in the construction industry contribute to the Funds pursuant to collective bargaining agreements between such employers and the Union. The Funds are third-party beneficiaries to such collective bargaining agreements as collectors and trustees of employer contributions made pursuant to these collective bargaining agreements. The Funds maintain their offices and are administered at 35-30 Francis Lewis Blvd., Suite 201, Flushing, New York 11358.

7.     Plaintiff Bowen is the Funds' Administrator and is a fiduciary of the Funds within the meaning of ERISA §§ 3(21) and 502 (29 U.S.C. §§ 1002(21) and 1132). Bowen brings this action in her fiduciary capacity.

8.     The Union is a labor organization within the meaning of the Taft-Hartley Act § 301 (29 U.S.C. § 185) and represents employees in an industry affecting commerce as defined by the Taft-Hartley Act § 501 (29 U.S.C. § 142) and ERISA § 3(4) (29 U.S.C. § 1002(4)). The Union is administered at its principal office located at 29-18 35th Avenue, Astoria, New York 11106.

9.     The Union collects, in accordance with the collective bargaining agreements, dues and contributions to the Organizer Fund and the New York State Laborers' Political Action Committee ("NYSLPAC"), which are deducted from employee wages and remitted to the Union.

10.    Defendant Concrete Industries is a for-profit domestic corporation doing business in the state of New York as an employer within the meaning of ERISA §§ 3(5) and 515 (29 U.S.C. §§ 1002(5) and 1145), and is an employer in an industry affecting commerce within the meaning of the Taft-Hartley Act § 301 (29 U.S.C. § 185). Upon information and belief, Concrete Industries' principal office is located at 921 E. County Line Road, Suite B2, Lakewood, New Jersey 08701.

11.    Defendant Furer is and was at all relevant times, the President and controlling corporate official of Concrete Industries and executed a collective bargaining agreement (the "Agreement") on behalf of Concrete Industries and in his personal capacity. Upon information and belief, Furer resides at 1103 Somerset Avenue, Lakewood, New Jersey 08701.

## BACKGROUND FACTS

12.    On or about March 17, 2015, Concrete Industries entered into the Agreement with the Union.

13.    The Agreement includes an evergreen clause which provides that it shall be

4

automatically extended and renewed from year to year unless either party gives written notice to the other, not less than sixty (60) calendar days and not more than ninety (90) calendar days prior to the then expiration date of the Agreement, of its desire to amend, change, or terminate the Agreement on its expiration date.

14.    The Agreement contains a provision located right before the signature blocks which states that "[t]he individual signing on behalf of the Employer hereby affixes his signature in a dual capacity both on behalf of himself and on behalf of the Employer and represents by his signature his authority to bind himself, the Employer or Firm and the principals and members thereof. The person signing on behalf of the Employer also agrees to be personally bound by and to assume all obligations of the Employer provided for in this Agreement."

15.    Furer, who is identified as President of Concrete Industries, signed the Agreement twice, once in his corporate capacity on behalf of Concrete Industries, and once in his personal capacity.  It states adjacent to the corporate capacity signature line "Officer's Signature." Adjacent to the personal capacity signature line, it states "Individual's Signature." Furer also provided his home address, home telephone number, and social security number underneath the personal capacity signature line.

16.    By signing the Agreement in his personal capacity, Furer agreed to be personally bound by and to assume all obligations of Concrete Industries provided in the Agreement, including but not limited to the obligation to pay fringe benefit contributions to the Funds, and to remit dues, Organizer Fund, and NYSLPAC contributions.

17.    To date, no written notice to amend, change, or terminate the Agreement has been provided and the Agreement remains in effect.

18.    Among other things, the Funds trust agreements and the Agreement require

Concrete Industries to: (i) submit to the Funds reports detailing the number of hours that Concrete Industries employees performed work within the trade and geographic jurisdictions of the Union ("Covered Work"); (ii) make fringe benefit contributions to the Funds based on the number of hours of Covered Work Concrete Industries employees performed; (iii) deduct dues, Organizer Fund, and NYSLPAC checkoffs from the wages of employees who performed Covered Work; (iv) remit all deducted dues, Organizer Fund, and NYSLPAC checkoffs to the Union; (v) permit the Funds and/or their designated representatives to audit Concrete Industries' books and records; and (vi) apply interest and other fees and costs on delinquent fringe benefit contributions and checkoffs.

19.     As President and the controlling corporate official of Concrete Industries, Furer signed the remittance reports submitted by Concrete Industries to the Funds, and the checks Concrete Industries submitted to the Funds for contributions and checkoffs.

20.     By signing the remittance reports, Furer certified that the information contained on said reports accurately detailed the number of hours that Concrete Industries employees performed Covered work.

21.     The Funds performed an audit of Concrete Industries' books and records ("Audit") for the period of April 1, 2016 through September 30, 2019 ("Audit Period"). The Audit revealed there were 7,486 hours of Covered Work performed by Concrete Industries employees during the Audit Period for which Concrete Industries failed to comply with its obligations under the Funds' trust agreements and the Agreement to make fringe benefit contributions to the Funds, and deduct and/or remit checkoffs to the Union.

22.     By correspondence, dated February 11, 2020, the Funds demanded full and immediate payment of all unpaid amounts revealed through the Audit.

23.     To date, neither Concrete Industries nor Furer have paid the amounts due specified in the Audit.

24.     Upon information and belief, Concrete Industries continued to perform Covered Work after the Audit Period, and continues to perform Covered Work.

## AS AND FOR A FIRST CLAIM FOR RELIEF
**(CLAIM FOR BREACH OF CONTRACT BY CONCRETE INDUSTRIES FOR DELINQUENT FRINGE BENEFIT CONTRIBUTIONS DURING THE AUDIT PERIOD)**

25.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 24 of this Complaint, as if fully set forth herein.

26.     Pursuant to the Agreement, Concrete Industries must make fringe benefit contributions to the Funds for each hour of Covered Work performed by Concrete Industries employees as set forth in Article XI and XII of the Agreement.

27.     Concrete Industries failed to make contractually mandated fringe benefit contributions for 7,486 hours of Covered Work performed by its individual employees during the Audit Period, resulting in a principal fringe benefits contributions delinquency of $188,882.82.

28.     Concrete Industries' failure to make and pay required contributions to the Funds during the Audit Period is a breach of the Agreement.

29.     Article XI § 11(f) of the Agreement requires employers found delinquent in their payment of contributions to the Funds to pay interest on the unpaid amounts at the rate of eighteen percent (18%) per annum.

30.     Article XI § 11(f) requires employers delinquent in their payment of contributions to the Funds to pay liquidated damages of twenty percent (20%) of the amount due and owing.

31.     Article XI § 11(f) requires employers delinquent in their payment of contributions to the Funds to pay all costs, including but not limited to reasonable audit and accounting expenses,

witness costs, attorneys' fees and court costs.

32.     Article XI § 11(f) of the Agreement provides that in the event where collection of payment is made pursuant to a judgment against the employer, the Funds are entitled to liquidated damages, interest, costs and attorneys' fees pursuant to ERISA.

33.     Accordingly, Concrete Industries is liable to the Funds for failing to make required fringe benefit contributions for Covered Work performed by Concrete Industries employees during the Audit Period in the principal amount of $188,882.82, plus interest, liquidated damages and all costs, including but not limited to reasonable audit and accounting expenses, witness costs, attorneys' fees and court costs, and all other contractual and statutory damages.

<u>AS AND FOR A SECOND CLAIM FOR RELIEF</u>
**(CLAIM FOR BREACH OF CONTRACT BY FURER FOR DELINQUENT FRINGE BENEFIT CONTRIBUTIONS DURING THE AUDIT PERIOD)**

34.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 33 of this Complaint, as if fully set forth herein.

35.     Pursuant to the Agreement, Concrete Industries must make fringe benefit contributions to the Funds for each hour of Covered Work performed by Concrete Industries employees as set forth in Article XI and XII of the Agreement.

36.     Concrete Industries failed to make contractually mandated fringe benefit contributions for 7,486 hours of Covered Work performed by its individual employees during the Audit Period, resulting in a principal fringe benefits contributions delinquency of $188,882.82.

37.     Concrete Industries' failure to make and pay required contributions to the Funds during the Audit Period is a breach of the Agreement.

38.     Article XI § 11(f) of the Agreement requires employers found delinquent in their payment of contributions to the Funds to pay interest on the unpaid amounts at the rate of eighteen

8

percent (18%) per annum.

39.     Article XI § 11(f) requires employers delinquent in their payment of contributions to the Funds to pay liquidated damages of twenty percent (20%) of the amount due and owing.

40.     Article XI § 11(f) requires employers delinquent in their payment of contributions to the Funds to pay all costs, including but not limited to reasonable audit and accounting expenses, witness costs, attorneys' fees and court costs.

41.     Article XI § 11(f) of the Agreement provides that in the event where collection of payment is made pursuant to a judgment against the employer, the Funds are entitled to liquidated damages, interest, costs and attorneys' fees pursuant to ERISA.

42.     By signing the Agreement in his personal capacity, Furer agreed to be personally bound by and to assume all obligations of Concrete Industries provided for in the Agreement.

43.     Accordingly, Furer is liable to the Funds for failing to make required fringe benefit contributions for Covered Work performed by Concrete Industries employees during the Audit Period in the principal amount of $188,882.82, plus interest, liquidated damages and all costs, including but not limited to reasonable audit and accounting expenses, witness costs, attorneys' fees and court costs, and all other contractual and statutory damages.

<u>**AS AND FOR A THIRD CLAIM FOR RELIEF**</u>
**(CLAIM FOR BREACH OF ERISA OBLIGATIONS BY CONCRETE INDUSTRIES)**

44.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 43 of this Complaint, as if fully set forth herein.

45.     ERISA § 515 (29 U.S.C. § 1145) requires employers to make contributions in accordance with the terms and conditions of collective bargaining agreements.

46.     Concrete Industries is an employer under ERISA and is bound by the Agreement.

47.     During the Audit Period, Concrete Industries failed to make fringe benefit

contributions to the Funds as required under the Agreement.

48.    Failure to make such payments violates ERISA § 515 (29 U.S.C. § 1145).

49.    Once it is found that an employer has violated ERISA § 515 (29 U.S.C. § 1145), the Court is required by ERISA § 502(g)(2) (29 U.S.C. § 1132(g)(2)) to award the Funds: (i) all unpaid ERISA fringe benefit contributions; (ii) interest on the unpaid contributions; (iii) an amount equal to the greater of interest on the unpaid contributions, or liquidated damages provided for under the Funds' plan; (iv) reasonable attorneys' fees and costs incurred in prosecuting the action; and (v) such other legal and equitable relief as the Court deems appropriate. Interest on unpaid contributions shall be determined by using the rate provided under the Funds' plan, or, if none, the rate prescribed under Section 6621 of Title 26 of the United States Code.

50.    Article XI § 11(f) of the Agreement provides for interest on delinquent fringe benefit contributions at a rate of eighteen percent (18%) per annum.

51.    Article XI § 11(f) provides for liquidated damages at the rate of twenty percent (20%) of the amount owing.

52.    Article XI § 11(f) of the Agreement provides that in the event that formal proceedings to recover unpaid contributions are instituted and the Court renders judgment for the Funds, Concrete Industries must pay to the Funds: (i) the unpaid contributions; (ii) interest on the unpaid contributions; (iii) liquidated damages; and (iv) the Funds' attorneys' fees and costs.

53.    Accordingly, Concrete Industries is liable to the Funds for failing to make required ERISA fringe benefit contributions for 7,486 hours of Covered Work performed by Concrete Industries employees during the Audit Period, plus statutory damages, including interest, liquidated damages, plaintiffs' attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate pursuant to § 502(g)(2) of ERISA (29 U.S.C. § 1132) and the

Agreement.

## AS AND FOR A FOURTH CLAIM FOR RELIEF
### (CLAIM FOR BREACH OF ERISA OBLIGATIONS BY FURER)

54.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 53 of this Complaint, as if fully set forth herein.

55.     ERISA § 515 (29 U.S.C. § 1145) requires employers to make contributions in accordance with the terms and conditions of collective bargaining agreements.

56.     During the Audit Period, Concrete Industries failed to make fringe benefit contributions to the Funds as required under the Agreement.

57.     Failure to make such payments violates ERISA § 515 (29 U.S.C. § 1145).

58.     Once it is found that an employer has violated ERISA § 515 (29 U.S.C. § 1145), the Court is required by ERISA § 502(g)(2) (29 U.S.C. § 1132(g)(2)) to award the Funds: (i) all unpaid ERISA fringe benefit contributions; (ii) interest on the unpaid contributions; (iii) an amount equal to the greater of interest on the unpaid contributions, or liquidated damages provided for under the Funds' plan; (iv) reasonable attorneys' fees and costs incurred in prosecuting the action; and (v) such other legal and equitable relief as the Court deems appropriate. Interest on unpaid contributions shall be determined by using the rate provided under the Funds' plan, or, if none, the rate prescribed under Section 6621 of Title 26 of the United States Code.

59.     Article XI § 11(f) of the Agreement provides for interest on delinquent fringe benefit contributions at a rate of eighteen percent (18%) per annum.

60.     Article XI § 11(f) provides for liquidated damages at the rate of twenty percent (20%) of the amount owing.

61.     Article XI § 11(f) of the Agreement provides that in the event that formal proceedings to recover unpaid contributions are instituted and the Court renders judgment for the

Funds, Concrete Industries must pay to the Funds: (i) the unpaid contributions; (ii) interest on the unpaid contributions; (iii) liquidated damages; and (iv) the Funds' attorneys' fees and costs.

62.     By signing the Agreement in his personal capacity, Furer agreed to be personally bound by and to assume all obligations of Concrete Industries provided for in the Agreement.

63.     Accordingly, Furer is liable to the Funds for failing to make required ERISA fringe benefit contributions for 7,486 hours of Covered Work performed by Concrete Industries employees during the Audit Period, plus statutory damages, including interest, liquidated damages, plaintiffs' attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate pursuant to § 502(g)(2) of ERISA (29 U.S.C. § 1132) and the Agreement.

**AS AND FOR A FIFTH CLAIM FOR RELIEF**
**(CLAIM FOR BREACH OF CONTRACT BY CONCRETE INDUSTRIES FOR**
**FAILURE TO REMIT DUES, ORGANIZER FUND, AND NYSLPAC CHECKOFFS**
**DURING THE AUDIT PERIOD)**

64.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 63 of this Complaint, as if fully set forth herein.

65.     Article X §§ 1 and 2 of the Agreement requires Concrete Industries to deduct and remit to the Union or to any agency designated by the Union, dues, Organizer Fund, and NYSLPAC checkoffs withheld from the wages of employees who perform Covered Work.

66.     Concrete Industries failed to deduct and/or remit to the Union or to any agency designated by the Union, the dues, Organizer Fund, and NYSLPAC checkoffs.

67.     During the Audit Period, Concrete Industries failed to deduct and/or remit $24,604.26 in dues, Organizer Fund and NYSLPAC checkoffs from the wages of its employees who performed Covered Work.

68.     Concrete Industries' failure to deduct and/or remit the dues, Organizer Fund, and NYSLPAC checkoffs is a breach of the Agreement.

69.     Article XI § 11(f) of the Agreement requires employers found delinquent in their payment of dues, Organizer Fund, and NYSLPAC checkoffs to pay interest on the unpaid amounts at the rate of eighteen percent (18%) per annum.

70.     Article XI § 11(f) requires employers delinquent in their payment of dues, Organizer Fund, and NYSLPAC checkoffs to pay liquidated damages on the unpaid amounts at the rate of twenty percent (20%).

71.     Article XI § 11(f) requires employers delinquent in their payment of dues, Organizer Fund, and NYSLPAC checkoffs to pay all costs, including but not limited to reasonable audit and accounting expenses, witness costs, attorneys' fees, court costs, and all other contractual damages.

72.     Accordingly, Concrete Industries is liable to the Union for undeducted and/or unremitted dues, Organizer Fund, and NYSLPAC checkoffs during the Audit Period in the principal amount of $24,604.26, plus interest, liquidated damages, and all costs, including but not limited to reasonable audit and accounting expenses, witness costs, attorneys' fees, court costs, and all other contractual and statutory damages.

### AS AND FOR A SIXTH CLAIM FOR RELIEF
### (CLAIM FOR BREACH OF CONTRACT BY FURER FOR FAILURE TO REMIT DUES, ORGANIZER FUND, AND NYSLPAC CHECKOFFS DURING THE AUDIT PERIOD)

73.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 72 of this Complaint, as if fully set forth herein.

74.     Article X §§ 1 and 2 of the Agreement requires Concrete Industries to deduct and remit to the Union or to any agency designated by the Union, dues, Organizer Fund, and NYSLPAC checkoffs withheld from the wages of employees who perform Covered Work.

75.     Concrete Industries failed to deduct and/or remit to the Union or to any agency

designated by the Union, the dues, Organizer Fund, and NYSLPAC checkoffs.

76.     During the Audit Period, Concrete Industries failed to deduct and/or remit $24,604.26 in dues, Organizer Fund and NYSLPAC checkoffs from the wages of its employees who performed Covered Work.

77.     Concrete Industries' failure to deduct and/or remit the dues, Organizer Fund, and NYSLPAC checkoffs is a breach of the Agreement.

78.     Article XI § 11(f) of the Agreement requires employers found delinquent in their payment of dues, Organizer Fund, and NYSLPAC checkoffs to pay interest on the unpaid amounts at the rate of eighteen percent (18%) per annum.

79.     Article XI § 11(f) requires employers delinquent in their payment of dues, Organizer Fund, and NYSLPAC checkoffs to pay liquidated damages on the unpaid amounts at the rate of twenty percent (20%).

80.     Article XI § 11(f) requires employers delinquent in their payment of dues, Organizer Fund, and NYSLPAC checkoffs to pay all costs, including but not limited to reasonable audit and accounting expenses, witness costs, attorneys' fees, court costs, and all other contractual damages.

81.     By signing the Agreement in his personal capacity, Furer agreed to be personally bound by and to assume all obligations of Concrete Industries provided for in the Agreement.

82.     Accordingly, Furer is liable to the Union for undeducted and/or unremitted dues, Organizer Fund, and NYSLPAC checkoffs during the Audit Period in the principal amount of $24,604.26, plus interest, liquidated damages, and all costs, including but not limited to reasonable audit and accounting expenses, witness costs, attorneys' fees, court costs, and all other contractual and statutory damages.

## AS AND FOR A SEVENTH CLAIM FOR RELIEF
### (CLAIM FOR BREACH OF CONTRACT BY CONCRETE INDUSTRIES AND FURER FOR FAILING TO POST A BOND)

83.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 82 of this Complaint, as if fully set forth herein.

84.     Pursuant to Article XI § 9(a) of the Agreement, Concrete Industries is required, *inter alia*, to post a surety bond to ensure payment of contributions that become due and owing to the Funds. Article XI § 9(a) provides in relevant part:

> Each Employer shall post a surety bond to insure payment of contributions to the C&CWDC Fringe Benefit Funds as follows:

| Number of Members Of Bargaining Unit | Amount of Bond |
|---|---|
| Employers employing up to and including fifteen (15) Employees | $50,000.00 |
| Employers employing over Fifteen (15) Employees | $75,000.00 |

> In lieu of a bond or as a supplement to the bond, an Employer may furnish a cash alternative in the amount of the bond required herein in full satisfaction of this bonding required.

85.     Upon information and belief, Concrete Industries has not posted a bond or provided the Funds or the Union with a cash alternative.

86.     The failure, refusal or neglect of Concrete Industries to post the required bond or cash alternative is a breach of the Agreement.

87.     By signing the Agreement in his personal capacity, Furer agreed to be personally bound by and to assume all obligations of Concrete Industries provided for in the Agreement.

88.     Accordingly, pursuant to Article XI § 9(a) of the Agreement, Concrete Industries and Furer are required to post a bond or furnish a cash alternative in the amount of the bond.

## AS AND FOR AN EIGHTH CLAIM FOR RELIEF
### (DEMAND FOR AN ORDER DIRECTING CONCRETE INDUSTRIES AND FURER TO PERMIT AND COOPERATE WITH AN AUDIT OF CONCRETE INDUSTRIES' BOOKS AND RECORDS)

89.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 88 of this Complaint, as if fully set forth herein.

90.     Pursuant to Article XI § 11(a) of the Agreement, Concrete Industries is required, *inter alia*, to permit and cooperate with the Funds and/or their designated representative in the conduct of audits of its books and records, which include, without limitation:

> [A]ll payrolls and payroll ledgers including office payrolls, yard payrolls, New York payrolls, New Jersey payrolls, computer payroll printouts, W-2 forms, quarterly payroll tax returns (Form 941), quarterly state payroll tax returns (Form NYS 45), annual federal and state tax returns, journals, purchase journals, New York State employment records, insurance company reports, employer remittance reports, payroll and supporting checks, ledgers, expense vouchers, 1099 forms, cash disbursements, check register, evidence of unemployment insurance contributions, payroll tax deductions, disability insurance premiums, certification of workers compensation coverage, checks in support of any governmental filings or tax payments, remittance reports and checks in support thereof and any other documentation concerning payment of fringe benefit contributions […] and any other items concerning payrolls.

91.     Article XI § 11(b) of the Agreement requires Concrete Industries to retain, for a minimum period of six (6) years, payroll and related records necessary for the conduct of a proper audit in order that a designated representative of the Trustees may make periodic review to confirm that contributions owed pursuant to the Agreement are paid in full.

92.     In addition, ERISA requires every employer to "maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees." 29 U.S.C. § 1059(a)(1).

93.     By signing the Agreement in his personal capacity, Furer agreed to be personally bound by and to assume all obligations of Concrete Industries provided for in the Agreement.

94.     Accordingly, pursuant to the terms and conditions of the Agreement, the Funds demand an order directing Concrete Industries and Furer to permit and cooperate with the Funds and/or their designated representative in the conduct of an audit of Concrete Industries' books and records for the period of October 1, 2019 through the present.

## AS AND FOR A NINTH CLAIM FOR RELIEF
### (CLAIM AGAINST CONCRETE INDUSTRIES AND FURER FOR FRINGE BENEFIT CONTRIBUTIONS, DUES, ORGANIZER FUND, AND NYSLPAC CHECKOFFS, AUDIT COSTS, AND OTHER DAMAGES FOUND PURSUANT TO AN AUDIT OF CONCRETE INDUSTRIES)

95.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 94 of this Complaint, as if fully set forth herein.

96.     The Agreement requires Concrete Industries to pay fringe benefit contributions, and dues, Organizer Fund, and NYSLPAC checkoffs found due and owing pursuant to an audit.

97.     Pursuant to Article XI § 11(f) of the Agreement, if such audit reveals a deficiency in the payment of fringe benefit contributions, and dues, Organizer Fund, and NYSLPAC checkoffs paid to the Funds and/or the Union during the period of the audit, Concrete Industries must pay to the Funds and Union all delinquent fringe benefit contributions and checkoffs, plus interest, liquidated damages, and costs, including but not limited to reasonable audit and accounting expenses, witness costs, attorneys' fees and court costs.

98.     Upon information and belief, Concrete Industries has not paid all fringe benefit contributions, and dues, Organizer Fund and NYSLPAC checkoffs due and owing to the Funds and the Union for the period of October 1, 2019 to the present.

99.     By signing the Agreement in his personal capacity, Furer agreed to be personally bound by and to assume all obligations of Concrete Industries provided for in the Agreement.

100.    Accordingly, Concrete Industries and Furer are liable to the Funds and the Union

for all unpaid fringe benefit contributions and dues, Organizer Fund and NYSLPAC checkoffs found due and owing pursuant to an audit for the period of October 1, 2019 through the present, plus interest, liquidated damages, reasonable audit and accounting expenses, audit costs, witness costs, attorneys' fees and court costs, all other contractual and statutory damages, and such other legal and equitable relief as the Court deems appropriate pursuant to § 502(g)(2) of ERISA (29 U.S.C. § 1132) and the Agreement.

### AS AND FOR A TENTH CLAIM FOR RELIEF
### (CLAIM FOR INJUNCTIVE RELIEF AGAINST CONCRETE INDUSTRIES AND FURER)

101.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 100 of this Complaint, as if fully set forth herein.

102.    Pursuant to the Agreement, Concrete Industries is required to timely pay fringe benefit contributions, and dues, Organizer Fund, and NYSLPAC checkoffs to the Funds and the Union, timely submit all required reports to the Funds and the Union, and permit and cooperate in the conduct of audits of Concrete Industries' books and records for so long as it remains obligated to do so pursuant to the Agreement.

103.    Article XI § 11(g) of the Agreement provides:

> Where payment is made or an audit is conducted pursuant to a judgment or court order, the Employer recognizes the right of the […] Funds to have the court enter an order permanently enjoining the Employer and its agents, representatives, directors, officers, stockholders, employees, successors and assigns, for the remaining term of the Agreement from failing, refusing or neglecting to submit the required employer remittance reports and/or to pay the required contributions to the […] Funds and requiring the Employer to cooperate in an audit in accordance with the provisions of the Agreement. In consideration of the Agreement, the Employer represents and warrants that it will not raise any defense, counterclaim or offset to the [Funds'] application for this order.

104.    By signing the Agreement in his personal capacity, Furer agreed to be personally

bound by and to assume all obligations of Concrete Industries provided for in the Agreement.

105.   Concrete Industries and Furer have failed to timely pay fringe benefit contributions, and dues, Organizer Fund, and NYSLPAC checkoffs to the Funds and the Union, timely submit all required reports to the Funds and the Union, and are currently in breach of their obligations under the Agreement.

106.   Upon information and belief, Concrete Industries continues to perform Covered Work under the Agreement.

107.   Concrete Industries' and Furer's prior and current conduct in failing to make the required payments under the Agreement demonstrates a significant likelihood that Concrete Industries and Furer will continue to breach the terms of the Agreement.

108.   In the absence of injunctive relief, the Funds and the Union have no adequate remedy at law to ensure that Concrete Industries and Furer will adhere to the terms of the Agreement now and in the future.

109.   The Funds and the Union will suffer immediate and irreparable injury unless the Court issues an injunction that requires Concrete Industries and Furer, now and for as long as they remains bound by the Agreement, and their officers, agents, servants and employees to pay and/or submit to the Funds and/or the Union the required monetary contributions, dues, Organizer Fund, and NYSLPAC checkoffs, and permit and cooperate in the conduct of audits.

110.   Accordingly, Plaintiffs request that the Court issue an injunction permanently enjoining Concrete Industries and Furer, their agents, representatives, directors, officers, stockholders, employees, successors and assigns and all persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, from failing, refusing or neglecting to pay and/or submit to the Funds and/or the Union the required

contributions and checkoffs, and permit and cooperate in the conduct of audits for so long as Concrete Industries and Furer remain obligated to do so pursuant to the Agreement.

## AS AND FOR AN ELEVENTH CLAIM FOR RELIEF
### (CLAIM FOR INJUNCTIVE RELIEF UNDER ERISA AGAINST CONCRETE INDUSTRIES AND FURER)

111.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 110 of this Complaint, as if fully set forth herein.

112.    Pursuant to the Agreement, Concrete Industries is required to timely pay fringe benefit contributions to the Funds, timely submit all required reports to the Funds, and permit and cooperate in the conduct of audits of Concrete Industries' books and records for so long as it remains obligated to do so pursuant to the Agreement.

113.    Article XI § 11(g) of the Agreement provides:

> Where payment is made or an audit is conducted pursuant to a judgment or court order, the Employer recognizes the right of the […] Funds to have the court enter an order permanently enjoining the Employer and its agents, representatives, directors, officers, stockholders, employees, successors and assigns, for the remaining term of the Agreement from failing, refusing or neglecting to submit the required employer remittance reports and/or to pay the required contributions to the […] Funds and requiring the Employer to cooperate in an audit in accordance with the provisions of the Agreement. In consideration of the Agreement, the Employer represents and warrants that it will not raise any defense, counterclaim or offset to the [Funds'] application for this order.

114.    By signing the Agreement in his personal capacity, Furer agreed to be personally bound by and to assume all obligations of Concrete Industries provided for in the Agreement.

115.    Concrete Industries and Furer have failed to timely pay fringe benefit contributions to the Funds, timely submit all required reports to the Funds, and are currently in breach of their obligations under the Agreement.

116.    Concrete Industries' and Furer's breach of their obligation to make fringe benefit

contributions under the Agreement is also a breach of Concrete Industries' and Furer's statutory obligations under ERISA.

117.    Upon information and belief, Concrete Industries continues to perform Covered Work under the Agreement and breach its obligations to make fringe benefit contributions under the Agreement and thus, its statutory obligations under ERISA.

118.    Concrete Industries' and Furer's prior and current conduct in failing to make the required contributions under the Agreement, in violation of their ERISA obligations, demonstrates a significant likelihood that Concrete Industries and Furer will continue to violate ERISA in the future.

119.    In the absence of injunctive relief, the Funds have no adequate remedy at law to ensure that Concrete Industries and Furer will adhere to the terms of the Agreement and abide by their statutory obligations now and in the future.

120.    The Funds will suffer immediate and irreparable injury unless the Court issues an injunction that requires Concrete Industries and Furer, now and for as long as they remain bound by the Agreement, and their officers, agents, servants and employees to pay and/or submit to the Funds the required monetary contributions, and permit and cooperate in the conduct of audits for as long as they remain obligated to do so under ERISA.

121.    Accordingly, Plaintiffs request that the Court issue an injunction permanently enjoining Concrete Industries and Furer, their agents, representatives, directors, officers, stockholders, employees, successors and assigns and all persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, from failing, refusing or neglecting to pay and/or submit to the Funds the required contributions and checkoffs, and permit and cooperate in the conduct of audits for so long as Concrete Industries and Furer

remain obligated to do so under ERISA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Concrete Industries and Furer jointly and severally:

a)      for payment of delinquent fringe benefit contributions in the principal amount of at least $188,882.82 for the Audit Period of April 1, 2016 through September 30, 2019;

b)      for payment of all required dues, Organizer Fund, and NYSLPAC checkoffs in the amount of at least $24,604.26 for the Audit Period of April 1, 2016 through September 30, 2019;

c)      for interest on the delinquent fringe benefit contributions, and dues, Organizer Fund, and NYSLPAC checkoffs from the time such contributions and checkoffs were due to the date of payment at the rate of eighteen (18%) per annum;

d)      for liquidated damages on the delinquent fringe benefit contributions, and dues, Organizer Fund, and NYSLPAC checkoffs at the rate of twenty percent (20%);

e)      for all ERISA damages pursuant to 29 U.S.C. § 1132(g);

f)      for all reasonable audit and accounting expenses;

g)      for all audit costs;

h)      for all witness costs;

i)      for Plaintiffs' attorneys' fees and costs;

j)      for an Order requiring Concrete Industries and Furer to post a bond or provide a cash alternative;

k)      for an Order requiring Concrete Industries and Furer to cooperate with the Funds in an audit of Concrete Industries' books and records for the time period of October 1, 2019

through the present;

l)      for an Order requiring payment of all fringe benefit contributions, dues, Organizer Fund, and NYSLPAC checkoffs, and all contractual and statutory damages found due and owing pursuant to an audit for the time period of October 1, 2019 through the present;

m)      for an Order permanently enjoining Concrete Industries and Furer, their agents, representatives, directors, officers, stockholders, employees, successors and assigns and all persons in active concert or participation with them who receive actual notice of the Order, by personal service or otherwise, for so long as they remain obligated to contribute to the Funds and the Union, from failing, refusing or neglecting to pay and/or submit to the Funds and the Union the required monetary contributions, and dues, Organizer Fund, and NYSLPAC checkoffs, and permit and cooperate in the conduct of audits for so long as Concrete Industries and Furer remain obligated to do so pursuant to the Agreement;

n)      for an Order permanently enjoining Concrete Industries and Furer, their agents, representatives, directors, officers, stockholders, employees, successors and assigns and all persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, from failing, refusing or neglecting to pay and/or submit to the Funds the required monetary contributions, and permit and cooperate in the conduct of audits for so long as Concrete Industries and Furer remain obligated to do so pursuant to ERISA; and

o)      for such other and further relief as the Court deems just and proper.

23

Dated:   New York, New York
         February 25, 2019

GORLICK, KRAVITZ & LISTHAUS, P.C.
*Attorneys for Plaintiffs*

By: _____
    Joy K. Mele (JM0207)
    Jennifer M. Catera (JC6943)
    29 Broadway, 20th Floor
    New York, New York 10006
    jmele@gkllaw.com
    jcatera@gkllaw.com
    Tel. (212) 269-2500
    Fax. (212) 269-2540